Number which I'll not read entirely Your first from Miss black Got a lot of extra lawyers. I'm sorry. What you have a lot of extra lawyers here Thank you, good morning and may it please the court When something walks like a duck Quacks like a duck and even introduces itself as mr. Duck It is a duck And the duck in this case is Murphy oil USA Which the parties both refer to as Mosa and The question before this court is whether Mosa is excluded from the Deepwater Horizon settlement agreement because Mosa was primarily engaged in the oil and gas industry as Described by the NAICS code in exhibit 17 to the agreement. It wasn't a gas retailer No, I thought the court found that 60% of the revenue is from gas station sales, is that erroneous Yes, it's both. Yes It's the court used the wrong test But if we and I'm happy to focus starting out just on Mosa Mosa itself that is without regard to the parent Murphy oil corporation, but Mosa itself Owned two oil refineries a wholesale distribution network and a chain of retail gas stations And as your honor noticed the decision below assigned Mosa a NAICS code for quote gasoline Gasoline stations with convenience stores because more than 60% of Moses revenue came from retail sales You said they own two refineries. I'm sorry what they own two refineries to oil refineries What a thousand retail stores? Well refinery is no no no no Yes, how many retail store I think it's 1,500 gas stations But I mean that's neither here nor there if the primary nature of the business is still in oil and gas Well, I understand. That's your argument. So go ahead. Yeah, so The the reason why is in just looking at retail revenue The court used the wrong test to determine the primary nature of its business The primary nature of a vertically integrated business like Mosa is not reflected by the revenue Realized at the final point of sale. That is when Moses sold gas to drivers at the pump Rather the retail revenue of a vertically integrated company must be apportioned to those activities that generate the retail revenue Otherwise if you don't do that all of the production and wholesale activities That no question are happening and that generated that retail revenue are treated as if they never happened and just didn't exist And let me to illustrate the point. Let's think of Tesla Tesla makes its own car batteries It manufactures its own cars and it sells the cars at retail through Tesla's storefront retail dealerships For all I know it has 1500 dealerships and Tesla only receives revenue at that retail level when the dealerships sell cars to customers Accepting the district courts methodology that looks to just the retail revenue Tesla is exclusively a retail car dealership. It engages in no manufacturing business whatsoever zero But everyone knows the primary nature of Tesla's business is in the building and design of a unique car Tesla is not a 50 billion dollar company because it's car dealerships excel at customer service and retail sales And using retail sales to determine most his primary business rested on the exact same fiction The test grossly understated Moses wholesaling operations and it grossly overstated retail activities Moses wholesaling operations and I'm not talking about The two oil refineries. I'm talking about the wholesale distribution of the 12 terminals These are gargantuan tanks that are just massive and these are massive facilities. So this is nothing to do with the oil refineries This is the wholesale operation. So let me just be clear on that The wholesaling operations supplied both to supplied gas to both third parties and Murphy or Moses retail gas station and Moses own internal business ledgers. These are their records show that the wholesaling activities again these these gargantuan terminals Generated seven point two billion dollars of revenue in 2010 2.6 billion of that revenue was based on the wholesaling to third parties and the remaining 4.6 is based on wholesaling to the retail gas stations That the district courts 60% figure By just looking at that 60% from retail revenue Assumes that most it did not engage in a single Internal wholesaling transaction whatsoever. It just didn't exist and it's even worse than that The 60% figure credits all 4.6 billion of internal wholesaling to retail activities In other words the figure assumes that Santa Claus Magically dropped off 4.6 billion dollars of gas on these 1,500 retail parking lots Once that fiction disappears Moses retail revenue falls to just 36% of its business With the remaining revenue coming from wholesaling and refinery Or to put the same point differently Moses primary business was not retail, but it was in the excludable oil and gas industry The district court also aired and not giving effect to Moses 2010 tax returns I'm still focusing on Mosa the the claimant the settlement agreement lists the NAICS code appearing on a claimants 2010 federal tax return as the very first factor that determines an entity's characterization Mosa assigned itself an oil and gas NAICS code for petroleum refineries This was no accident Mosa assigned itself the exact same excluded oil and gas code both the year before and after 2010 and This was done before NAICS codes were relevant under the settlement agreement Ignoring Moses self-identification was both legally erroneous and an abuse of discretion When combined with everything else we know about Mosa The district court ignored both how Mosa function and existed as a vertically integrated company and how Mosa held itself out as an oil and gas company to the entire world Mosa was not a gas station like racetrack SACA suds or Circle K and That's why Mosa never described itself as such when it named itself Murphy oil USA When it filed federal tax returns and it reported to shareholders and investors Mosa held itself out as a vertically integrated oil and gas company that was involved in all stages of the downstream oil and gas activities in the United States It was only when Mosa thought it could collect 60 million dollars under the settlement agreement That it became primarily a gas station business and a convenience store business And the third legal error that we point out in our brief is that the court erred and not giving effect to section 2.24 of the settlement agreement That section requires exclusions to be based on quote the substantive nature of the business not the legal or juridical form of that business and that means the settlement program is required to determine what the entity does for whom and why and The settlement agreement makes that determination without regard to artificial legal distinctions And as we've discussed Mosa carried out all of the u.s. Downstream activities in This case for its parent Murphy oil corporation, which is an international oil and gas company the district court Completely ignored that reality didn't even mention it and instead myopically looked at Murphy Moses retail outlets divorced from their broader and only purpose to serve the parents oil and gas business a 2010 annual report and this is at the record at 293 Says that the corporation is quote an international oil and gas company that conducts its business through various operating subsidiaries Murphy oil company a corporation tellingly Chose a picture of an offshore oil rig to put on the cover of its annual report The report continues the corporation owns oil and gas Excuse me the corporation produces oil and gas owns two petroleum refineries to ethanol production facilities in the u.s. and operates a growing retail marketing gasoline station chain and I again, I don't think that matters how many gas stations they own The other side gives no meaning to section 2.2 for they haven't once defined in the briefs or below what that section means They've treated that last clause as if it doesn't exist But a fundamental canon of contract interpretation is that courts give effect to all provisions of an agreement and What the decision below does is it precludes the settlement program from looking beyond corporate form to determine an entity's true substantive nature? This case illustrates the point All oil and gas companies that it would be excluded under the agreement Have operations that if they were separately incorporated would be compensable under the settlement agreement Take human resources or the cafeteria now we agree that the distinction between the division of a company and a wholly owned subsidiary is Obviously legally relevant and even dispositive in many contexts But here the parties contracted to allow the settlement program to disregard legal form When the legal form hides the true substantive nature of the business In an analogous context which we cite in the briefs the Supreme Court in the copper copper weld case held that in the antitrust laws a Corporation cannot conspire with its wholly owned subsidiary and that's because the two companies effectively operate as a single unit section 2.2 for incorporates this principle It it captures a wholly owned subsidiary that may engage in Compensable services or activities under the agreement such as the cafeteria services But the wholly owned subsidiary like here the cafeteria is inexorably intertwined with its parent And they act together as a single unit Because I have some time on left on the clock I wanted to address The other side on the issue about the apportionment the 60% figure grossly Just pretending like the wholesaling activities didn't exist and the retail activities being Inflated says that this issue was waived because BP did not mention this issue in its three-page brief below before the district court Waiver makes absolutely no sense and I would say would be absurd to apply it in the context where In this streamlined process and most so tellingly doesn't claim any prejudice Nor explains why any reason that's ever been given for a waiver rule could justify applying it here That's right and that's why yeah, so I'm not asking this court to open up the ledgers We said in the brief in which we think is this just gets remanded so the court this court would not address Doesn't have to address the tax code issue. I mentioned or the section 2.2 for looking at Murphy Murphy oil USA's relationship to its parent because This issue was extensively briefed before the appeals panel about the where the retail revenue was coming from The appeals panel had no occasion to decide it because the appeals panel said Mosa is carrying out all the operations of an excluded corporation and it acknowledged that BP made the argument and Then the district court there are three you have a three-page limit and the settlement agreement provides this discretionary review process It's not like ordinary litigation and this court is more familiar with it than I am. But it basically says you You have three pages to Justify why the court should look at whether the appeals panel properly was in compliance with the settlement agreement So BP appropriately devoted its three pages to addressing the appeals panel decision While acknowledging it was preserving all of the arguments it made before the appeal panel in the exclusion In support of the exclusion and so to apply waiver here would be you know BP did not have either a full or a fair opportunity to do it And I also a hasten to say if you find waiver here You would very much defeat the entire purpose in the thrust of this three-page streamlined process Because parties would be crazy in every case not to say I can't make all my arguments in three pages this argument about the wholesaling operations in the 7.2 billion figure took up 10 pages of briefing just by BP a 13 page Affidavit by an expert with exhibits So the notion that you would stick that in a three-page brief or even that would have made a difference with a single footnote Doesn't seem like a very good reason to find waiver just reserve the remaining amount of time for I'm gonna go ahead and use the 51 seconds for one more point The other argument they made in the brief about this issue. We're talking about the remand They say all those 12 terminals these gargantuan tanks. Those aren't those aren't wholesaling These were just warehouses like lock and key where you you know can store your furniture when you're renovating your house And so they say it came under an excludable code for warehousing and that warehousing code storage code has bulk storage bulk petroleum storage but their annual report Conclusively shows that these terminals are not in storage But are in the excludable code on exhibit 17 for both terminals and stations. It's a very I think what they did was was not very credible and not very nice But they they they they use X they seized on the notion that it says bulk petroleum storage To get away from the fact that they were a bulk petroleum terminal, which is a wholesaling operation In flight counted 14 times in their annual report They described their terminals not like a storage not like pulling merchandise from the warehouse but part of a wholesale distribution network and marketing operations and Just read a quote Murphy oil owns a network of 12 company-owned terminals and to lease terminals that supply fuel not store fuel To retail and wholesaling stations in 26 states and to various asphalt and marine fuel customers It not once mentions the word storage or warehouse Thank you Mr. Eber Ever May it please the court Mike Eber with my colleague Jeff Willis on behalf of Murphy oil USA, which I will refer to as Moussa at all relevant times Moussa was a downstream oil company whose primary business activity was the sale of gasoline and merchandise at over a thousand retail stations with convenience stores Based on his review of the record and aided by his vast experience With the settlement program judge Barbier made specific factual findings Including that Moussa's appropriate industry classification code was the one for gas stations with convenience stores Claimants with that code are expressly included in the class under Exhibit 2. They are not excluded under Exhibit 17 Those factual findings by the district court are absolutely correct and more importantly given the court's standard of review They are certainly plausible in light of the record most of what you heard from BP just now was an alternative presentation of facts that was Assessed by judge Barbier and he reached an alternative conclusion That is equally if not more plausible given the competing facts that are in the record. There can't be clear error by definition Among other things just to mention briefly the record contains Contemporaneous accounting records that report the specific quote-unquote retail sales Revenue that we would use to calculate the 60% figure There's a myth in BP's briefing that Moussa has re-engineered its accounting documents, which is simply not accurate the trial balance Has a contemporaneous information with a date stamp at the top of it It refers to revenues it then has a item for retail sales and it lists 8.6 billion dollars worth of retail sales in the year 2010 of Petroleum there's also a separate line item for about 2 billion dollars worth of sales at convenience stores The 60% figure is adding those two numbers up and dividing them by the total amount of revenue reported on those same documents That's where the at least 60% figure comes from It's BP not Moussa that attempts to re-engineer those accounting documents by bringing in an expert Who's trying to say that? Retail revenue wasn't actually retail revenue even though the money was all received when a payment was made at the pump for gasoline The record also includes an unrebutted affidavit from Robert Harris Who's a distinguished accounting expert and the former chair of the American Institute of CPAs who said that our revenue calculations are quote? Unquestionably consistent with the contemporaneous financial statements and that BP's effort to reallocate is Fundamentally flawed for several reasons that I'll get into Those materials mean that there's ample support for judge Barbier's findings and that there is certainly no clear error that has been proven Before responding to some of the specific arguments that miss Platt made I'd like to go back to the framework for the court's analysis Because there's an admission by BP both parties are on the same page that whether Mouse is excluded from the class is based on a Determination of the entity's NAICS code and whether that code is listed on exhibit 17 They acknowledge that in their reply brief at page 10 It's a determination of which code it was so it's was that Listed on exhibit 17 for oil and gas or was it listed on it as we contend exhibit 2 as a gas station with convenience Well, miss Blatt said it was on the 2010 tax return. I can address the tax return issue now if you'd wish Well, you're talking about the code. I'm just trying to figure out what position you're taking on that Oh well Our position throughout litigation has been that the appropriate NAICS code is the one for gas stations with convenience stores And let me jump right into the tax issue if that concerns you your honor It's different than what you said it is and we acknowledge that the there is some That the code on those tax returns is incorrect and the parties in particular BP pushed for the claims administrator to recognize policy 480 version 2 which Acknowledges the reality that NAICS codes listed on tax returns are often or at least not uncommonly incorrect The reason for that by the way is because that code has absolutely no effect on the tax liability of the company and it had none here for Mousa So there's a policy in place which says that the code listed on the tax return is not Determinative and as we pointed out in our brief that that's language that BP pushed for to have an official claims administrator policy That says you can look at that code But the real question is is the code correct or is it not correct and that determination is based on the totality of the circumstances Judge Barbier did consider that there's a claim by BP that he ignored it That's not accurate the the order that judge Barbier issued expressly quotes from section 4471 of the settlement agreement Which is the provision that says the evidence to be considered includes the NAICS code as well as business licenses and other evidence So that was part of the mix of facts that he continued to that he evaluated Also to provide some context on the tax code what happened there is that's a carryover from previous years where? Mousa had been using the same code for many years Going back to long before the company had as many as a thousand gas stations because at one point it was true that in the Mid-90s it was primarily a petroleum refinery before it had an explosion of the number of stations that it had and I'll point out there's some illustrative evidence of this because even in tax year 2011 Which was a year during which Mousa sold the refineries? So at the end of the year it did not own the refineries at all the 2011 tax reform Which is in the record at three two seven eight four Still used the refinery tax NAICS code, which is pretty good evidence that the company was not Re-evaluating that code on an annual basis and performing new calculations that it was a carryover And this is not in the record, but I can represent to the court that Mousa's 2012 tax return Continued to list the same code so a full year after Mousa had completely disposed of the refineries It was still putting the refinery code on its tax returns Which the only reasonable explanation is that it's an error which I think is exactly what George Barbier Viewed it to be in light of the rest of the evidence well And just to restate. I mean, I think the point is under two point two point four point five all these points The Judge Barbier was required to look at to review Which NAICS code was used on a tax return, but that's one of several factors that he's supposed to consider But he he's free to determine what the appropriate NAICS code is Irrespective of what the code is on that tax return. Is that correct? Yes, your honor and what he determined based on the facts was that our sixty percent of revenue calculation Based on the contemporaneous financial data was correct He credited that including the affidavit evidence that was submitted from Robert Harris saying that it was correct And if you credit that evidence, which I think the court has to do given its deferential review Then it is certainly reasonable for him to conclude that the code on the tax return was not accurate and in light of the policy That even BP advocated the correct NAICS code is the one for gas stations with convenience stores In Terms of the legal framework. There's there's also one other basic point I'd like to emphasize which is that the NAICS code determination requires the choice between NAICS codes It's it's either Refineries or wholesale distribution or retail sales as relevant to this case. Those are the basic choices BP appears to acknowledge that they can't really defend the refinery code We in they planted a flag in their opening brief in the ground and they said the only possible choice is for refineries We then presented facts in our response brief that say well No The revenue data shows that that is wrong the volume data shows that it's wrong the refineries produced their output was about fifth of what was sold by the rest of the company and Even earnings and margins show that's wrong Unit margin for the refineries was 23 cents a barrel the unit margin for the retail sales was over $4 a barrel So if the retail stations are selling a lot more than the refineries are producing and they're doing so at much greater Volume then by definition they are generating more revenue and more profits In light of that BP retreats in their reply brief and they say something Which ms. Blatt repeated and that is that the primary nature of the business is oil and gas that it's refineries And wholesale that's improper under the settlement. They're trying to combine two NAICS codes, which is impermissible There's plain language in section 447 which says the settlement program shall determine the in the singular the appropriate NAICS code and this court in Louisiana tax which was the case we cited in our supplemental authority just recently explained that the appropriate NAICS code is the one That most accurately describes the primary business activities So on your and that's on exhibit 17 the 447 is the sort of guiding framework for Exhibit 17 and similar languages also within exhibit 17 itself so when forced to choose What judge Barbier had to do is essentially put these codes in rank order and say what's the best code? He can't combine codes. He can't make a new hybrid code He has to pick one and the evidence supported the finding that the one correct code was for gas stations and convenience stores I'd like to turn to the waiver issue that BP addressed just to make a few points. I think Well, the court may have reluctance in just making an outright finding of waiver given the limited briefing below I think one conclusion is is eminently sensible and that is BP should not be entitled to a remand in order to get judge Barbier to give a more detailed answer to an argument that they never specifically made to him In that sense, the waiver principles are quite strong So when when BP stands up and says well, we want him to give a more detailed order what they're really asking for is an opportunity to rebrief the issue and And they're criticizing him for not spending a substantial amount of ink in responding to the argument that was never presented to him We think judge Barbier did pass upon the issue. His order says that he reviewed the record It also says that Moussa had persuasively argued that the 60% figure is correct And I'll add that the briefing we submitted, the three-page brief, we mentioned the 60% figure and defended it We also specifically cited to the Harris declaration that I've mentioned several times It was incumbent upon BP, if they had a response to that, to put it in their three-page brief This wasn't even simultaneous briefing They had two weeks to respond and they made a decision And that decision was to emphasize the argument that persuaded the appeal panel rather than this other argument that they had either lost on or that didn't persuade the appeal panel in the first instance The only way they presented the argument, even arguably, was a footnote that says we purport to incorporate by reference all of our previous briefing Well, that's not adequate The three-page briefing is by design It's because there's a crushing workload in light of the BP litigation, which this Court is certainly familiar with Judge Barbier, we were informed by the claims administrator that as of this summer Judge Barbier had received 2,500 requests for discretionary review He's granted review in over 400 cases He's written decisions in over 100 unique cases If this Court were to require him to have a 10-page order in every case that answers the arguments made in briefing that weren't explained in the three-page brief, we think that would set a terrible precedent that would undermine the ability of the claims process to resolve itself I'd also add that the argument BP made that this was really not an issue before Judge Barbier is incorrect Rule 31 of the discretionary court rules says that Judge Barbier's review is de novo of the appeal panel decision So if there's an argument in defense of the appeal panel judgment, BP was in fact required to present that argument to Judge Barbier and they can't come back after the fact either to raise the argument that had been waived and certainly not to ask for a remand so that they have another shot to present the argument in the first instance As for the accounting issues, the Tesla example comes up in their reply brief for the first time and also today As a preliminary matter, there's no evidence in the record about Tesla, what its revenue recognition policies are what the facts of the company are, what NAICS code it used or any of that There was nothing presented to Judge Barbier or this Court about how their code should be calculated or otherwise And the assumption that everyone knows they're a manufacturing company, we dispute If it were true that the margins they would obtain from a retail markup was greater than the margin they might obtain from manufacturing just as an example, then they would not be primarily a manufacturer and certainly that would be assisted by evidence that was never put in the record by BP Secondly, their own example proves one of the arguments that we have with respect to the accounting issue And that is when Tesla ships an automobile from its manufacturing facility and then has a distribution network that delivers them to their dealerships No one thinks of that as quote-unquote wholesale distribution No one would say, well, they have a distribution network so we're going to call them a wholesaler Which is the same argument that we made and specifically supported by Mr. Harris That when Moussa has gasoline at its terminals and then supplies it to its retail outlets Which is the word that was quoted from the 10K, that supply function is not a wholesale activity You don't wholesale a product to yourself And that's not a technical issue as BP claims in their brief And you're talking about the 12 terminals now Yes, so the terminals, Your Honor, did conduct wholesale activity when they made a sale to a third party And that revenue is part of the 60% calculation That's part of the 40% that was not retail We have evidence in the record that's really not disputed in any specific way That when the terminals supplied product internally, which they did and there's no dispute about that That internal product supply function is not wholesale Because there's no wholesale transaction, there's no third party Inventory is not reduced, there's no tax that's incurred, there's no revenue that's received This is what Mr. Harris says This undermines the fundamental assumption of their whole effort to reallocate revenue Because what their purported expert, Mr. Gaspardo, does Is he just takes retail revenue and calls it wholesale And he has to do that because in order to recalculate what they're trying to put the retail revenue into Is a bucket for merchant wholesale distribution It's not just terminal activities The language of the NAICS code, which is part of Exhibit 17, is merchant wholesale distribution So if it's not wholesale distribution, then they don't get to move it back into that category And, you know, we've argued consistently that Mr. Gaspardo, their expert He uses the word wholesale 20 times in his declaration He never even attempts to defend why that's accurate We then put in a declaration that says that's fundamentally wrong Not as a technical matter, but as a basic principle of accounting and economic reality You don't wholesale to yourself They have no response to that in the record There's no rebuttal from Mr. Gaspardo There's no counter-definition of wholesale There's no citation to anything by P. except for their ipsy-dixit That it shouldn't be considered wholesale And certainly Judge Barbier was entitled to credit the evidence that we put into the record To say that the most appropriate NAICS code was not wholesale activity Because this internal product supply function was not actually wholesale Another argument that BP makes is about the substantive nature of the business Which I'll address briefly I think most of this issue is resolved by the Louisiana tax decision that the court issued recently It is an unpublished decision, but it's of maximum persuasive value Because it addresses the precise argument that BP is making here about the very same settlement agreement What the court said in that case was it clarified what this substantive nature language does not mean And it said expressly that the directive is not an order to disregard legal distinctions between entities Section 224 does not require the settlement program to consider related but legally distinct entities For the purposes of determining exclusions That basically guts the argument that BP's making, which I think is why they didn't lead with it now Because the question, the relevant question is what is the substantive nature of Mousa's business Not what is the substantive nature of its parent company The parent company, Murphy Oil Corporation, is not the claimant Whether or not they were an integrated company or did exploration and extraction activities is wholly irrelevant Particularly when BP acknowledges that the claimant here, Mousa, did not perform any of those exploration and production activities There was integration in the sense that the parent company had subsidiaries throughout the oil supply chain But that's a far cry from integration in an operational sense Where the claimant here would have actually been performing the excluded activities of the parent There's no dispute that Mousa performed downstream oil activities Primarily, there is a dispute about what the primary aspect of that is But the record supports Judge Barbier's conclusion that the primary form of those downstream activities was not excluded And the only relevance, therefore, of the connection to the parent company Would be if BP could attribute some of the other activities of the parent company over to Mousa If they could say, well, somehow Mousa should be called an oil extractor or explorer But that simply fails on the facts The record is actually quite clear that the parent company operated two separate and distinct lines of business One was exploration, the upstream activities One was downstream, that's what Mousa did Mousa did not perform the upstream activities It didn't contribute to them 97% of the oil extracted by the upstream subsidiaries was sold to third parties There was a very small fraction that was sold to Mousa So there's no dependence of one side on the other So when the court evaluates substantive nature of the business It needs to keep in mind, this is a question about NAICS codes What's the appropriate code? BP can't possibly say that it's extraction and exploration Given Mousa doesn't do any of that The only relevant question is, is it refining or wholesale or retail? The relationship with its parent company really doesn't affect that at all Whether or not the parent company was an integrated oil and gas company It doesn't make Mousa more or less of a refiner More or less of a wholesaler Or more or less of a retail company The facts support Judge Barbier's conclusion That the primary business activity was retail sales That is supported by the contemporaneous data It's consistent with the settlement agreement Particularly as it was interpreted in Louisiana tax And while BP may stand up and have an alternative presentation of the facts Judge Barbier was entitled to assess all of the evidence in light of his expertise And to make a factual finding that the most appropriate NAICS code Is the one for retail sales And therefore Mousa is not excluded And they're entitled to the award given by the claims administrator Thank you Thank you, sir Ms. Platt, you have five minutes on rebuttal Thank you. May it please the court I'm just going to try to take this in a straightforward sort of bullet order On the factual finding saying that the standard of review here is The district court made a factual finding which was clearly correct If a court uses the wrong test The court may say the light was green But if the court said I determined that by looking at this morning's horoscope That's legally erroneous. You don't defer to it In terms of the Tesla argument The court didn't even consider the argument Because it wasn't briefed That's why they're saying we waived it So it seems farcical at the same time to say you waived it The court considered it and rejected it They can't have that both ways Of course the court didn't consider it because it had no occasion to It wasn't briefed And if this court was going to argue Say that we waived it You are opening up a can of worms In terms of that three-page limit I didn't hear them mention prejudice That's usually what people say when they argue waiver I didn't hear them explain It was a lot of just talking But there was no explanation on why you would encourage parties In a three-page brief To try to argue every single argument that was made Before the appeals panel Which had an unlimited page number We could have filed 10,000 pages And they say all that should have been in a three-page brief Tesla Let's go back to Tesla We agree if you look at Tesla And the numbers show that the customer service Is really jamming at Tesla And it's not really a manufacturing department Great Our only point which he never disputed Is that just looking at retail revenue Absolutely, invariably, structurally, inevitably Distorts What the company is doing Because it pretends that no manufacturing happened Their rule would say We don't even look at anything but Tesla Because all of their revenue came from retail So no manufacturing occurred But I'll give you another example A farmer who sweats all year With 100 employees And he sells his apples at a roadside stand Under their view All the money came in from the roadside stand He's not a farmer He could have a winery Direct sales to customers Just looking at retail revenue Suggests that there's no manufacturing Now on remand, if they want to say Let's talk about the numbers Let's do that And then we can talk about the numbers on this one They say that there was a lot in there about refinery It's just a tiny percent on the refinery There's no question on the math If you take away the fiction That all of the wholesaling Was attributed to retail The retail drops to 36% And they say, well that doesn't You only get one NAICS code Exhibit 17 actually says Business entities within the NAICS description Set forth below are excluded And so there are 16 of those Their view is if you had 1 16th In each excludable NAICS code Too bad I mean, that's absurd Or even half of a business in excludable NAICS code And the other half in excludable NAICS code Because there's not a 51% The company all of a sudden Gets compensation That just cannot be the test And here The numbers were refinery and wholesale Together made up 64% And if they want to argue on remand That the math was done incorrectly Now they did talk about Yeah, but we reported this correctly This was, we had an affidavit That this is standard accounting No one disputes that exactly what Mosa did Was proper for how it reported Its revenue No one disputes that Tesla Obviously correctly has financial statements Showing its revenue But Mosa's own records We didn't make this up Their own records at page It's on the record at 560 and 564 Is their own ledger saying We had $7.2 billion In revenue They say that, we didn't make that up And they divided it 4.6 To internal wholesaling And 2.6 to Internal And to wholesaling to third parties They equate them So that's how that record That's how that number comes from If I could talk about the tax code issue We agree, Judge Graves The court, it's It gives you three factors It says and or And so yeah, you can have the tax return And great, may have been a mistake Our point is the district court just said I have three things to look at And then went straight to the 60% retail figure It didn't even mention the 2010 tax return They could have argued it was a mistake And the district court could have made findings That they didn't Let me ask you about one of your statements That they underestimated wholesale So Mr. Evers Said that you don't wholesale to yourself So that would Eliminate 4.6 billion Right, and that's what their affidavit said What I'm saying their own records Say was that 7.2 billion 4.6 billion of that Was reflected as Revenue and then it got all credited To their retail sales So whether or not I don't know what he means By you don't wholesale yourself for what purpose That's what I'm asking I don't know why he's talking about that They can try to argue this on remand All of these arguments I'd say 99% of what we've been talking about It should be remanded And we're not saying remand it to the appeals panel The district court can do it in the first instance But that's unusual It should go back to the appeals panel That never decided it Okay, thank you Thank you These cases Argue this more